Marc Zemel
Evelyn Mailander
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WASTE ACTION PROJECT, )<br><br>Plaintiff, )<br><br>v. )<br><br>GENERAL CONSTRUCTION<br>COMPANY, KIEWIT<br>INFRASTRUCTURE WEST CO., and<br>KIEWIT CORPORATION, )<br><br>Defendants. ) | COMPLAINT |

## I.    INTRODUCTION

1.    This action is a citizen suit brought under Section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365. Plaintiff, Waste Action Project, seeks declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witnesses' fees, for Defendants' General Construction Company, Kiewit Infrastructure West Co., and Kiewit Corporation (collectively, "Kiewit's"), repeated and ongoing violations of the terms and conditions of its National Pollutant Discharge Elimination System

COMPLAINT - 1

("NPDES") permit authorizing certain stormwater discharges of pollutants from Kiewit's facility in Seattle, Washington to navigable waters.

## II.    JURISDICTION AND VENUE

2.    The Court has subject matter jurisdiction over Waste Action Project's claims under Section 505(a) of the CWA, 33 U.S.C. § 1365(a). Sections 309(d) and 505(a) and (d) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a) and (d), authorize the relief Waste Action Project requests.

3.    Under Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Waste Action Project notified Kiewit of its violations of the CWA and of Waste Action Project's intent to sue under the CWA by letter postmarked October 15, 2024 ("Notice Letter"). A copy of the Notice Letter is attached to this complaint as Exhibit 1. The allegations in the Notice Letter are incorporated herein by this reference. In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1), Waste Action Project notified the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region 10, and the Director of the Washington Department of Ecology ("Ecology") of its intent to sue Kiewit by mailing copies of the Notice Letter to these individuals on October 15, 2024.

4.    At the time of the filing of this Complaint, more than sixty days have passed since the Notice Letter and copies thereof were issued in the manner described in the preceding paragraph.

5.    The violations complained of in the Notice Letter are continuing and/or are reasonably likely to re-occur.

COMPLAINT - 2

6.      At the time of the filing of this Complaint, neither the EPA nor Ecology has commenced any action constituting diligent prosecution to redress the violations alleged in the Notice Letter.

7.      The source of the violations complained of is in King County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington under Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b).

## III.   PARTIES

8.      Waste Action Project is suing on behalf of itself and its members.

9.      Waste Action Project is a non-profit corporation organized under the laws of the state of Washington. Waste Action Project is dedicated to protecting and preserving the environment of Washington State, especially the quality of its waters. Waste Action Project is a membership organization and has at least one member who is injured by Kiewit's violations.

10.     Waste Action Project has representational standing to bring this action. Waste Action Project's members are reasonably concerned about the effects of discharges of pollutants, including stormwater from Kiewit's facility, on water quality and aquatic species and wildlife that Waste Action Project's members observe, study, use, and enjoy. Waste Action Project's members are further concerned about the effects of discharges from Kiewit's facility on human health. In addition, discharges from Kiewit's facility lessen Waste Action Project's members' aesthetic enjoyment of nearby areas. Waste Action Project has members who live, work, fish, and recreate around or use the Duwamish River and Elliott Bay which are affected by Kiewit's discharges. Waste Action Project's members' concerns about the effects of Kiewit's discharges are aggravated by Kiewit's failure to record and timely report information about its discharges

COMPLAINT - 3

and pollution controls in a timely manner. The recreational, scientific, economic, aesthetic, and/or health interests of Waste Action Project and its members have been, are being, and will be adversely affected by Kiewit's violations of the CWA. The relief sought in this lawsuit can redress the injuries to these interests.

11.    Defendants General Construction Company, Kiewit Infrastructure West Co., and Kiewit Corporation are interrelated corporations in the Kiewit corporate family. Kiewit Corporation, Kiewit Infrastructure West Co., and General Construction Company are corporations authorized to conduct business under the laws of the state of Washington.

12.    Kiewit operates a marine industrial construction and civil construction facility, located at or about 3838 W. Marginal Way SW, Seattle, WA 98106 (referred to herein as the "facility").

### IV.    LEGAL BACKGROUND

13.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA. A discharge of a pollutant from a point source to waters of the United States without authorization by a NPDES permit, issued under Section 402 of the CWA, 33 U.S.C. § 1342, is prohibited.

14.    The state of Washington has established a federally approved state NPDES program administered by Ecology. Wash. Rev. Code § 90.48.260; Wash. Admin. Code ch. 173-220. This program was approved by the Administrator of the EPA pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

15.    Under Section 402 of the CWA, 33 U.S.C. § 1342, Ecology has repeatedly issued iterations of the Industrial Stormwater General Permits, including most recently on December 2, 2024, effective January 1, 2025, and set to expire December 31, 2029 (the "2025 ISGP"). The

COMPLAINT - 4

2025 ISGP ("the Permit") authorizes those that obtain coverage thereunder to discharge stormwater associated with industrial activity, a pollutant under the CWA, and other pollutants contained in the stormwater to waters of the United States subject to certain terms and conditions. The previous iteration of the permit was issued on November 20, 2019, and was effective from January 1, 2020 through December 31, 2024 (the "2020 ISGP," and collectively with the 2025 ISGP, "the Permits"). The terms of the 2025 ISGP are substantially similar to those of the 2020 ISGP, and its terms require implementation of source control and treatment best management practices from the 2020 ISGP.

16.    The Permit imposes certain terms and conditions on those covered thereby, including requirements for monitoring and sampling of discharges, reporting and recordkeeping requirements, and restrictions on the quality of stormwater discharges. To reduce and eliminate pollutants in stormwater discharges, the Permit requires, among other things, that permittees develop and implement best management practices ("BMPs") and a Stormwater Pollution Prevention Plan ("SWPPP"), and apply all known and reasonable methods of prevention, control, and treatment ("AKART") to discharges. The specific terms and conditions of the Permit are described in detail in the Notice Letter, attached hereto as <u>Exhibit 1</u> and incorporated herein by this reference.

## V.    FACTS

17.    Ecology granted Kiewit coverage for the facility under the 2020 ISGP under Permit number WAR309232. Although the Permit is in General Construction Company's name, because of their knowledge of, and control over the facility and all the violations described in this Complaint, Kiewit Infrastructure West Co. and Kiewit Corporation are jointly liable for all

COMPLAINT - 5

violations of the Permit. Ecology renewed Kiewit's permit coverage under the 2025 ISGP under the same permit number, WAR309232.

18.    Kiewit discharges stormwater and pollutants associated with industrial activity to the West Waterway of the Duwamish River, which flows into Elliott Bay.

19.    Kiewit's facility is engaged in industrial activities and is approximately 4.09 acres. Kiewit's facility has multiple distinct points of discharge where stormwater and other pollutants leave the facility, eventually entering the West Waterway of the Duwamish River.

20.    Kiewit has violated and continues to violate "effluent standards or limitations," as defined by 33 U.S.C. §1365(f). Kiewit's violations of the Permit and the CWA are set forth in sections I through IX of the Notice Letter attached hereto as Exhibit 1 and are incorporated herein by this reference. In particular, and among the other violations described in the Notice Letter, Kiewit has violated the Permit by failing to comply with water quality standards, failing to comply with AKART standards, failing to prepare and implement an adequate SWPPP, failing to implement BMPs to control water quality, failing to collect quarterly samples, failing to analyze quarterly samples, failing to comply with numeric effluent limitations, failing to comply with Puget Sound Sediment Cleanup Site requirements, failing to correctly and timely submit Discharge Monitoring Reports ("DMRs"), failing comply with visual monitoring requirements, failing to implement corrective actions, failing to implement BMPs to prevent bacteria, failing to correctly and timely submit annual reports, failing to record information, failing to retain records, and failing to report Permit violations.

21.    Kiewit discharges stormwater to a Puget Sound Sediment Cleanup Site. Condition S6.C.2 of the Permits establishes a benchmark limit of 30 mg/L for total suspended solids (TSS) for facilities discharging to Puget Sound Sediment Cleanup Sites. To the extent Kiewit does not

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

discharge to a Category 5 waterbody or is not otherwise subject to a TSS numeric effluent limitation as alleged below, Kiewit's discharges are subject to the TSS benchmark. Kiewit discharges stormwater from the facility containing levels of pollutants that exceed the benchmark values established by the Permits, including the days on which Kiewit collected samples with the results identified in Tables 1 and 2, and is likely to continue discharging comparably unacceptable levels of pollutants in its stormwater:

Table 1: Monitoring Point MP1* Benchmark Exceedances

| Quarter in which sample was collected | Turbidity (benchmark 25 NTU) | Copper (benchmark 14 µg/L) | Zinc (benchmark 117 µg/L) | TSS (benchmark 30 mg/L) |
|---|---|---|---|---|
| Q3 2020 | 121 NTU | 33 µg/L | 316 µg/L | 149 mg/L |
| Q4 2020 | 298 | 190 | 1460 | 1420 |
| Q4 2021 | 83.1 | 31 | 169 | 316 |
| Q4 2022 | | 15.3 | | |
| Q1 2023 | 100 | 31.4 | 200 | 71.2 |
| Q2 2023 | 400 | 55.8 | 517 | 184 |
| Q3 2023 | 110 | 34.5 | 285 | 49 |
| Q1 2024 | 39.7 | | | |
| Q2 2024 | | 14.2 | | |
| Q3 2024 | | 22.1 | | |

*MP1 is a monitoring point designation used and known by Kiewit

Table 2: Monitoring Point MP2* Benchmark Exceedances

| Quarter in which sample was collected | Turbidity (benchmark 25 NTU) | Copper (benchmark 14 µg/L) | Zinc (benchmark 117 µg/L) | TSS (benchmark 30 mg/L) |
|---|---|---|---|---|
| Q3 2023 | 67.4 NTU | 22.9 µg/L | 142 µg/L | |
| Q1 2024 | 28.6 | | | |
| Q2 2024 | | 26.5 | 124 | |
| Q3 2024 | 41.9 | 66 | 191 | 32 mg/L |

*MP2 is a monitoring point designation used and known by Kiewit

22.    The stormwater samples identified in Tables 1 and 2 are representative of and accurately characterize the quality of stormwater discharges generated by Kiewit's facility during the associated calendar quarters. The stormwater monitoring data provided in Tables 1

COMPLAINT - 7

and 2 shows benchmark exceedances included in the stormwater monitoring results that Kiewit submitted to Ecology.

23.     Kiewit's stormwater discharges are causing or contributing to violations of water quality standards and therefore violate Condition S10.A of the Permits. Discharges from Kiewit's facility contribute to the polluted conditions of the waters of the state, including the water quality standards of the West Waterway of the Duwamish River, which is included on the state's "303(d)" list of impaired water bodies. Discharges from Kiewit's facility contribute to the ecological impacts that result from the pollution of these waters and to Waste Action Project's and its members' injuries resulting therefrom. These requirements and Kiewit's violations thereof are described in detail in section I.A of the Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference.

24.     Kiewit's exceedances of the benchmark values indicate that Kiewit is failing to apply AKART to its discharges and is failing to implement an adequate SWPPP and BMPs. Kiewit violated and continues to violate Conditions S10 and S3 of the Permits by not developing, modifying, and/or implementing BMPs in accordance with the requirements of the Permit, and/or by not applying AKART to discharges from the facility. These requirements and Kiewit's violations thereof are described in detail in section I.B and section II of the Notice Letter, attached as Exhibit 1, and incorporated herein by this reference.

25.     Kiewit has violated and continues to violate the monitoring requirements of Conditions S3.B.5, S4.B, S5, S6.C, S7, and S9.B of the Permits. Kiewit has failed to sample its stormwater discharges once during every calendar quarter at each distinct point of discharge offsite except for substantially identical outfalls excluded by a sufficiently detailed analysis in the facility's SWPPP. Kiewit failed to analyze stormwater samples for the required parameters,

COMPLAINT - 8

including parameters required for facilities conducting Marine Industrial Construction, as required by Permit Condition S5 and Tables 2 and 3. Kiewit failed to analyze stormwater samples for fecal coliform as required by Permit Condition S6.C for facilities discharging to impaired waters. Kiewit failed to remove accumulated storm drain solids a minimum of once per permit term as required by Permit Condition S6.C.2. Kiewit failed to analyze samples from storm drain solids a minimum of once per permit term and failed to report the results from such sampling to Ecology as required in a Solids Monitoring Report ("SMR"). Kiewit failed to submit DMRs by the prescribed deadline in Permit Condition S9. Kiewit failed to comply with visual monitoring requirements required by Permit Condition S7 by failing to conduct Industrial Stormwater Monthly Inspections, failing to maintain the requisite inspection reports and checklists, and failing to make the requisite certifications and summaries by qualified personnel each and every month for the last five years. Kiewit's violations of the Permit's monitoring and Puget Sound Sediment Cleanup Site requirements are described in section III of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and incorporated herein by this reference. All these violations are reasonably likely to recur.

26.    Kiewit triggered Level One Corrective Action requirements for each benchmark exceedance identified in Tables 1 and 2 above. Kiewit has violated the requirements of Condition S8.B of the Permits by failing to conduct Level One Corrective Action requirements in accordance with the Permit's conditions, including the required inspection to investigate the cause; review, revision, and certification of the SWPPP; the required implementation of additional BMPs; and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, including the benchmark exceedances listed in Tables 1 and 2 above. These Corrective Action

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

requirements and Kiewit's violations thereof are described in section IV.A of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These violations are reasonably likely to recur.

27.    Kiewit triggered Level Two Corrective Action requirements for each benchmark exceedance identified in Tables 1 and 2 above that occurred in any two quarters of a calendar year. Kiewit has violated the requirements of Condition S8.C of the Permits by failing to conduct a Level Two Corrective Action in accordance with Permit conditions, including the required review, revision, and certification of the SWPPP, the required implementation of additional structural source control BMPs, and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, for any two quarters during a calendar year, including the benchmark exceedances listed in Tables 1 and 2 above. These violations include Kiewit's failure to perform Level Two Corrective Action requirements for turbidity, copper and zinc triggered by its stormwater sampling during calendar years 2020, 2023, and 2024. These corrective action requirements and Kiewit's violations thereof are described in section IV.B of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These violations are reasonably likely to recur.

28.    Kiewit triggered Level Three Corrective Action requirements for each benchmark exceedance identified in Tables 1 and 2 above that occurred in any three quarters of a calendar year. Kiewit has violated the requirements of Condition S8.D of the Permits by failing to conduct a Level Three Corrective Action in accordance with Permit conditions, including the required review, revision, and certification of the SWPPP, the required preparation and submission of an engineering report describing additional treatment BMPs, the required submission of an

COMPLAINT - 10

1    Operation and Maintenance Manual, the required implementation of additional treatment BMPs,

2    and the required summarization in the Annual Report, each time during the past five years that

3    its quarterly stormwater sampling results were greater than a benchmark, for any three quarters

4    during a calendar year, including the benchmark exceedances listed in Tables 1 and 2 above.

5    These violations include Kiewit's failure to perform Level Three Corrective Action requirements

6    by September 2024 for zinc, copper, and turbidity triggered by its stormwater sampling during

7    calendar year 2023. These corrective action requirements and Kiewit's violations thereof are

8    described in section IV.C of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated

9    herein by this reference. These violations are reasonably likely to recur.

10            29.    Kiewit has failed and continues to fail to comply with the mandatory BMP

11   requirements of Permit Condition S6.C. for facilities discharging to 303(d)-listed waters. Kiewit

12   does not conduct an annual dry weather inspection of its stormwater system to identify and

13   eliminate sanitary sewer cross-connections and has failed to incorporate into its SWPPP and

14   implement adequate operational and structural source control BMPs to address sources of fecal

15   coliform bacterial contamination. These requirements and Kiewit's violations thereof are

16   described in section V of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated

17   herein by this reference. These violations are reasonably likely to recur.

18            30.    Kiewit is subject to a numeric effluent limit for TSS of 30 mg/L because General

19   Construction Company is listed in Appendix 4 of the 2020 ISGP as a facility discharging to an

20   impaired waterbody. Kiewit has violated Permit Condition S6.C.2 by discharging stormwater

21   that contains elevated levels of TSS in excess of the Permit's numeric effluent limit, as indicated

22   in Table 3, below. These requirements and Kiewit's violations thereof are described in section VI

23

24

COMPLAINT - 11

of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These violations are reasonably likely to recur.

**Table 3: Effluent Limit Violations**

| Quarter in which sample was collected | TSS (effluent limit 30 mg/L) |
|---|---|
| Q3 2020 | 149 mg/L |
| Q4 2020 | 1420 |
| Q4 2021 | 316 |
| Q1 2023 | 71.2 |
| Q2 2023 | 184 |
| Q3 2023 | 49 |
| Q3 2024 | 32 |

31. Kiewit has failed to comply with the requirement to submit an accurate and complete annual report to Ecology each year as required by Permit Condition S9.C. Kiewit has failed to comply with the requirement to document its corrective actions as required by Permit Conditions S8.B-D. Kiewit has violated these conditions because the annual reports submitted by Kiewit do not include the required information including as to stormwater problems and corrective actions. These requirements and Kiewit's violations thereof are described in section VII of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These violations are reasonably likely to recur.

32. Kiewit has failed and continues to fail to comply with recordkeeping requirements of Permit Condition S4.B.4 of the Permits. Kiewit does not record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if Kiewit collected the sample within the first twelve hours of a stormwater discharge event, an explanation of why Kiewit could not collect a sample within the first twelve hours of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling, as required by the Permit Condition. These requirements

COMPLAINT - 12

and Kiewit's violations thereof are described in section VIII.A of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

33.    Kiewit has failed and continues to fail to comply with record keeping requirements of Permit Condition S9.D. of the Permits. Kiewit does not retain for a minimum of five years a copy of the current Permit, a copy of Kiewit's coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit, as required by the Permit Conditions. These requirements and Kiewit's violations thereof are described in section VIII.B of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

34.    Condition S9.F of the Permits requires Kiewit to take certain actions, including reporting to Ecology, in the event Kiewit is unable to comply with any terms and conditions of the Permit which may endanger human health or the environment. Kiewit has failed to comply with these requirements of the Permit by failing to report and subsequently correct permit violations, including each and every time Kiewit failed to comply with corrective action requirements as described above in paragraphs 26-28, each and every time Kiewit failed to sample a stormwater discharge as described above in paragraph 25, and each and every time Kiewit discharged stormwater with amounts of pollutants in excess of the Permit benchmarks

COMPLAINT - 13

and/or numeric effluent limits, as described in paragraphs 21 and 30 above. These violations are reasonably likely to recur.

35.     A significant penalty should be imposed against Kiewit under the penalty factors set forth in 33 U.S.C. § 1319(d).

36.     Kiewit's violations were avoidable had Kiewit been diligent in overseeing facility operations and maintenance.

37.     Kiewit benefited economically as a consequence of its violations and failure to implement improvements at the facility.

38.     Kiewit's violations caused and contributed to pollution in the water column and sediments of the receiving water, which may be ameliorated by an order from the Court requiring clean up or monitoring.

## VI.     CAUSE OF ACTION

39.     The preceding paragraphs and the allegations in the Notice Letter attached hereto as Exhibit 1 are incorporated herein.

40.     Kiewit's violations of its NPDES permit described herein and in the Notice Letter constitute violations of Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342, and violations of "effluent standard(s) or limitation(s)" as defined by Section 505 of the CWA, 33 U.S.C. § 1365.

41.     No agency has taken an enforcement action constituting diligent prosecution or otherwise precluding claims under 33 U.S.C. §§ 1319 or 1365(a).

42.     Prior notice of violations and claims was provided to Kiewit and others as required.

COMPLAINT - 14

43.     These violations committed by Kiewit are ongoing or are reasonably likely to continue to occur. Any and all additional violations of the Permit and the CWA which occur after those described in Waste Action Project's Notice Letter, but before a final decision in this action, should be considered ongoing violations subject to this Complaint.

44.     Without the imposition of appropriate civil penalties and the issuance of an injunction, Kiewit is likely to continue to violate the Permit and the CWA to the further injury of Waste Action Project, its members, and others.

## VII.    RELIEF REQUESTED

Wherefore, Waste Action Project respectfully requests that this Court grant the following relief:

A.     Issue a declaratory judgment that Kiewit has violated and continues to be in violation of the Permit and the CWA

B.     Enjoin Kiewit from operating the facility in a manner that results in further violations of the Permit and the CWA;

C.     Order Kiewit to immediately develop and implement a SWPPP that complies with the Permit at the facility;

D.     Order Kiewit to allow Waste Action Project to participate in the development and implementation of Kiewit's SWPPP and compliance plan;

E.     Order Kiewit to provide Waste Action Project, for a period beginning on the date of the Court's Order and running for three years after Kiewit achieves compliance with all of the conditions of the Permit, with copies of all reports and other documents which Kiewit submits to Ecology regarding Kiewit's coverage under the Permit at the facility at the time these documents are submitted;

COMPLAINT - 15

1        F.      Order Kiewit to take specific actions to remediate the environmental harm caused

2  by its violations;

3        G.      Order Kiewit to pay civil penalties of \$66,712 per day of violation for each

4  violation committed by Kiewit, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C.

5  §§ 1319(d) and 1365(a), and 40 C.F.R. § 19 and 19.4;

6        H.      Award Waste Action Project its litigation expenses, including reasonable

7  attorneys' and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. §

8  1365(d), and any other applicable authorization; and

9        I.      Award such other relief as this Court deems appropriate.

10

11        RESPECTFULLY SUBMITTED this 9th day of January, 2025.

12

13                    Smith & Lowney, PLLC
By:    By: *s/Marc Zemel*
Marc Zemel, WSBA #44325

14                    By: *s/Evelyn Mailander*
Evelyn Mailander, WSBA #62827

15                    Attorneys for Plaintiff
2317 E. John St.,

16                    Seattle, WA 98112
Tel: (206) 860-2124

17                    Fax: (206) 860-4187
E-mail: marc@smithandlowney.com,

18                    evelyn@smithandlowney.com

19

20

21

22

23

24

COMPLAINT - 16

EXHIBIT 1

# SMITH & LOWNEY
## ——— PLLC ———
### ATTORNEYS AT LAW

October 9, 2024

**Via Certified Mail - Return Receipt Requested**

Managing Agent
General Construction Company
3838 W Marginal Way SW
Seattle, WA 98106

Managing Agent
General Construction Company
1550 Mike Fahey St.
Omaha, NE 68102

Managing Agent
Kiewit Infrastructure West Co.
1550 Mike Fahey St.
Omaha, NE 68102

Managing Agent
Kiewit Corporation
1550 Mike Fahey St.
Omaha, NE 68102

Re:    **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT AND REQUEST FOR COPY OF STORMWATER POLLUTION PREVENTION PLAN**

Dear Managing Agent:

We represent Waste Action Project, P.O. Box 9281, Covington, WA 98042, (206) 849-5927.  Any response or correspondence related to this matter should be directed to us at the letterhead address (Smith & Lowney, PLLC, 2317 E. John St., Seattle, WA 98112).  This letter is to provide you with sixty days' notice of Waste Action Project's ("WAP") intent to file a citizen suit against General Construction Company, ("General Construction"), Kiewit Infrastructure West Co. ("Kiewit Infrastructure"), and Kiewit Corporation ("Kiewit Corp."), collectively referred to herein as "Kiewit," under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described below.  This letter is also a request for a copy of the complete and current stormwater pollution prevention plan ("SWPPP") required by General Construction's National Pollution Discharge Elimination System ("NPDES") permit.



General Construction was granted coverage under Washington's Industrial Stormwater General Permit ("ISGP") issued by the Washington Department of Ecology ("Ecology") effective January 1, 2020, and set to expire on December 31, 2024, under NPDES No. WAR309232 (the "Permit").

Kiewit has violated and continues to violate the CWA (*see* Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342) and the terms and conditions of the Permit with respect to operations of, and discharges of stormwater and pollutants from, its facility located at or about 3838 W Marginal Way SW, Seattle, WA 98106 (the "facility") as described herein, to the Duwamish River.  Although the Permit is in General Construction's name, because of their knowledge of, and control over the facility and all the violations described in this letter, Kiewit Infrastructure, and Kiewit Corp. are also liable for all violations of the Permit, which Waste Action Project intends to enforce with a citizen suit. The facility subject to this notice includes any contiguous or adjacent properties owned or operated by General Construction, Kiewit Infrastructure, or Kiewit Corp.

## I.    COMPLIANCE WITH STANDARDS.

### A.  Violations of Water Quality Standards.

Condition S10.A of the Permit prohibits discharges that cause or contribute to violations of water quality standards.  Water quality standards are the foundation of the CWA and Washington's efforts to protect clean water.  In particular, water quality standards represent the U.S. Environmental Protection Agency ("EPA") and Ecology's determination, based on scientific studies, of the thresholds at which pollution starts to cause significant adverse effects on fish or other beneficial uses.  For each water body in Washington, Ecology designates the "beneficial uses" that must be protected through the adoption of water quality standards.

A discharger must comply with both narrative and numeric criteria water quality standards.  WAC 173-201A-010; WAC 173-201A-510 ("No waste discharge permit can be issued that causes or contributes to a violation of water quality criteria, except as provided for in this chapter.").  Narrative water quality standards provide legal mandates that supplement the numeric criteria.  Furthermore, the narrative water quality standard applies with equal force even if Ecology has established a numeric water quality standard.  Specifically, Condition S10.A of the Permit requires that Kiewit's discharges not cause or contribute to an excursion of Washington State water quality standards.

Kiewit discharges directly to the Duwamish River from all outfall locations located at the facility. The West Duwamish Waterway does not meet water quality standards for, among other pollutants, polychlorinated biphenyls (PCBs), dissolved oxygen (DO), fecal coliform, and sediment, and is included on the state's "303(d)" list of impaired water bodies. In addition, the lower Duwamish River is a Puget Sound Sediment Cleanup Site. Kiewit discharges stormwater that contains elevated levels of turbidity, copper, zinc, and total suspended solids ("TSS"), as indicated in the table of benchmark excursions below.  These discharges cause and/or contribute to violations of water quality standards for turbidity, copper, zinc, TSS, and designated uses in the Duwamish River and have occurred each and every day during the last five years on which there was 0.1 inch or more of precipitation, and continue to occur.  *See* WASH. ADMIN. CODE § 173-201A-200 (fresh water designated uses and criteria), (1)(a) and (b) (general criteria applicable to all aquatic life fresh water uses), (1)(e) (aquatic life turbidity criteria), (2) (recreational uses), (3) (water supply uses) and (4) (miscellaneous uses); § 173-201A-240 (toxic substances criteria for zinc and copper); § 173-201A-260 (natural conditions and narrative toxics and aesthetics criteria); § 173-201A-600 (use designations for fresh waters); § 173-201A-602 (use designations for

the Duwamish River including: rearing and migration aquatic life uses; primary contact recreational uses; industrial, agricultural, and stock water supply uses; and wildlife habitat, fish harvesting, commerce and navigation, boating, and aesthetic uses).

**Table 1: Benchmark Exceedances**

| Quarter in which sample collected (with sample location) | Zn Concentration (Benchmark 117 ug/L) | Turbidity (Benchmark 25 NTU) | Cu Concentration (Benchmark 14 ug/L) | TSS (Benchmark 30 mg/L) |
|---|---|---|---|---|
| 3rd Quarter 2020 MP1 | 316 | 121 | 33 | 149 |
| 4th Quarter 2020 MP1 | 1460 | 298 | 190 | 1420 |
| 4th Quarter 2021 MP1 | 169 | 83.1 | 31 | 316 |
| 4th Quarter 2022 MP1 | | | 15.3 | |
| 1st Quarter 2023 MP1 | 200 | 100 | 31.4 | 71.2 |
| 2nd Quarter 2023 MP1 | 517 | 400 | 55.8 | 184 |
| 3rd Quarter 2023 MP1 MP2 | 285 142 | 110 67.4 | 34.5 22.9 | 49 |
| 1st Quarter 2024 MP1 MP2 | | 39.7 28.6 | | |
| 2nd Quarter 2024 MP1 MP2 | 124 | | 14.2 26.5 | |

**B.    Compliance with Standards**.

Condition S10.C of the Permit requires Kiewit to apply all known and reasonable methods of prevention, control and treatment ("AKART") to all discharges, including preparation and implementation of an adequate SWPPP and best management practices ("BMPs"). Kiewit has violated and continues to violate these conditions by failing to apply AKART to its discharges or to implement an adequate SWPPP and BMPs as evidenced by the elevated levels of pollutants in its discharge indicated in the table above and as described below in this notice of intent to sue.

Condition S1.A of the Permit requires that all discharges and activities authorized be consistent with the terms and conditions of the permit. Kiewit has violated these conditions by discharging and acting inconsistent with the conditions of the Permit as described in this notice of intent to sue.

## II.    STORMWATER POLLUTION PREVENTION PLAN VIOLATIONS.

Kiewit is in violation of the Permit's SWPPP provisions as follows:

1.    Condition S3.A of the Permit requires Kiewit to develop and implement a SWPPP as specified.  Condition S3.A.1 of the Permit requires the SWPPP to specify BMPs necessary to provide AKART and ensure that discharges do not cause or contribute to violations of water quality standards.  Kiewit has violated these requirements of the Permit each and every day since the Permit was issued, and continues to violate them as it has failed to prepare and/or implement a SWPPP that includes AKART BMPs and BMPs necessary to comply with state water quality standards.

2.    Condition S3.A of the Permit requires Kiewit to have and implement a SWPPP that is consistent with permit requirements, fully implemented as directed by permit conditions, and updated as necessary to maintain compliance with permit conditions.  Kiewit has violated these requirements of the Permit each and every day during the last five years and continues to violate them because its SWPPP is not consistent with permit requirements, has not been fully implemented, and has not been updated as necessary.

3.    The SWPPP fails to satisfy the requirements of Condition S3 of the Permit because it does not adequately describe BMPs.  Condition S3.B.4 of the Permit requires that the SWPPP include a description of the BMPs that are necessary for the facility to eliminate or reduce the potential to contaminate stormwater.  Condition S3.A.2 of the Permit requires that the SWPPP include BMPs consistent with the Stormwater Management Manual for Western Washington (SWMMWW), available at https://fortress.wa.gov/ecy/ezshare/wq/SWMMs/2024SWMMWW/2024_SWMMWW.htm or document how stormwater BMPs included in the SWPPP are demonstratively equivalent to the practices contained in the SWMMWW, including the proper selection, implementation, and maintenance of all applicable and appropriate BMPs.  Kiewit's SWPPP does not comply with these requirements because it does not adequately describe BMPs and does not include BMPs consistent with the SWMMWW nor does it include BMPs that are demonstratively equivalent to such BMPs with documentation of BMP adequacy.

4.    Kiewit's SWPPP fails to satisfy the requirements of Condition S3.B.1 of the Permit because it does not include a site map that meets the requirements of the Permit. For example, the site map does not identify each sampling location and does not identify the locations of all structural source control BMPs, paved areas and impervious surfaces, areas of pollutant contact associated with specific industrial activities, and fueling areas, and does not identify the stormwater drainage areas for each stormwater discharge point off site, among others.

5.    Kiewit's SWPPP does not comply with Condition S3.B.2 of the Permit because it does not include an adequate inventory of materials.  The SWPPP does not identify areas associated with industrial activities that may generate on-site dust or particulates, nor does the SWPPP include the method and location of on-site storage or disposal of materials and a list of previous significant spills and significant leaks of toxic or hazardous pollutants, as the Permit requires, among other deficiencies.

6.    Condition S3.B.4 of the Permit requires that Kiewit include in its SWPPP and implement certain mandatory BMPs unless site conditions render the BMP unnecessary, infeasible, or an alternative and equally effective BMP is provided. Kiewit is in violation of this requirement because it has failed to adequately describe in its SWPPP and implement the mandatory BMPs of the Permit.

7.  Kiewit's SWPPP does not comply with Condition S3.B.4.b.i of the Permit because it does not include required operational source control BMPs, including in the following categories: good housekeeping (including an accurate schedule/frequency for each housekeeping BMP, where each BMP is implemented at the facility, and how each BMP will be implemented at the facility, among others); preventive maintenance (including BMPs to inspect and maintain stormwater drainage, source controls, treatment systems, and plant equipment and systems, a specific schedule/frequency for each BMP, and how and where each BMP is implemented at the facility, among others); spill prevention and emergency cleanup plan (including BMPs to prevent spills that can contaminate stormwater, for material handling procedures, storage requirements, cleanup equipment and procedures, and spill logs); employee training (including a log of dates on which specific employees received training, among other requirements); and inspections and recordkeeping (including identification of personnel who conduct inspections, past completed inspection reports, and a definition of how Kiewit will comply with the record retention requirements).

8. Kiewit's SWPPP does not comply with Condition S3.B.4.b.i.7 of the Permit because it does not adequately describe measures to identify and eliminate the discharge of process wastewater, domestic wastewater, noncontact cooling water, and other illicit discharges to stormwater sewers, or to surface waters and ground waters of the state.

9. Kiewit's SWPPP does not comply with Condition S3.B.4.b.ii of the Permit because it does not adequately describe required structural source control BMPs to minimize the exposure of manufacturing, processing, and material storage areas to rain, snow, snowmelt, and runoff.

10. Kiewit's SWPPP does not comply with Condition S3.B.4.b.iii of the Permit because it does not adequately describe adequate treatment BMPs as required.

11. Kiewit's SWPPP fails to comply with Condition S3.B.4.b.v of the Permit because it does not include adequate BMPs to prevent the erosion of soils or other earthen materials and prevent off-site sedimentation and violations of water quality standards.

12. Kiewit's SWPPP fails to satisfy the requirements of Condition S3.B.5 of the Permit because it fails to include an adequate stormwater sampling plan as required.  The SWPPP does not include a sampling plan that: identifies each point of discharge to surface waters, storm sewers, or discrete ground water infiltration locations; documents why each discharge point is not sampled; identifies each sampling point by its unique identifying number; and identifies each pollutant parameter for which Kiewit is required to analyze its discharge samples because of the nature of the facility's industrial activities and the receiving waters.

## III.    MONITORING AND REPORTING VIOLATIONS.

### A.    Failure to Collect Quarterly Samples.

Condition S4.B of the Permit requires Kiewit to collect a sample of its stormwater discharges at least once during every calendar quarter. Condition S4.B.3.a of the Permit requires Kiewit to collect stormwater samples at each distinct point of discharge offsite except for substantially identical outfalls, in which case only one of the substantially identical outfalls must be sampled.  These conditions set forth sample collection criteria

but require the collection of a sample even if the criteria cannot be met. On information and belief, the facility has several distinct points of discharge off-site, including Outfall 1 (#8132), Outfall 2 (#8133), discharges from its wharf on the river, and where stormwater runs off roofs and ground surfaces at the northern facility boundary.

Kiewit violated these requirements by failing to collect stormwater samples at any of its discharge points during the first, second, and third quarters of 2021 and during the first, second, and third quarters of 2022. Kiewit also violated these requirements by failing to collect representative stormwater samples for Outfall 1 at all until the third quarter of 2023.

Kiewit has also violated and continues to violate these conditions because it does not sample each distinct point of discharge off-site, including runoff from the wharf and to the north. These violations have occurred and continue to occur each and every quarter during the last five years that Kiewit was and is required to sample its stormwater discharges, including the quarters in which it collected stormwater discharge samples from some, but not each, point of discharge. These violations will continue until Kiewit commences monitoring all distinct points of discharge.

**B.      Failure to Analyze Quarterly Samples.**

Conditions S5.A.1 (Benchmarks and Sampling Requirements), S5.B (Additional Sampling Requirements for Specific Industrial Groups) and Table 3 (Additional Benchmarks and Sampling Requirements Applicable to Specific Industries, including Marine Industrial Construction) of the Permit require Kiewit to analyze stormwater samples collected quarterly for turbidity, pH, total copper, total zinc, oil sheen, arsenic, PAH compounds, p-cresol, phenol, TSS, and petroleum hydrocarbons (NWTPH-Dx), because of the receiving waters to which the Facility discharges, and because of its industrial activities, including Marine Industrial Construction activity classified under Ecology code ECY003.

In addition, Condition S6.C of the Permit requires that dischargers to a "303(d)-listed" waterbody, either directly or indirectly through a stormwater drainage system, must comply with the applicable sampling requirements and numeric effluent limits in Table 6 of the Permit. Kiewit discharges to the Duwamish River, which is 303(d)-listed for fecal coliform, dissolved oxygen, and polychlorinated biphenyls (PCBs). Condition S6.C requires that Kiewit sample for fecal coliform once per quarter and submit the results to Ecology. Kiewit has failed to fulfill this requirement in each calendar quarter since the facility obtained Permit coverage, in violation of the Permit.

Kiewit violated these conditions by failing to analyze stormwater samples as described in Table 2 below:

**Table 2 – Parameters Not Analyzed**

| Monitoring Period | Parameters Not Analyzed |
|---|---|
| 3rd Quarter 2020 | Arsenic, PAH compounds, p-cresol, phenol, NWTPH-Dx, fecal coliform |
| 4th Quarter 2020 | Arsenic, PAH compounds, p-cresol, phenol, NWTPH-Dx, fecal coliform |
| 1st Quarter 2021 | All |
| 2nd Quarter 2021 | All |

| 3rd Quarter 2021 | All |
|---|---|
| 4th Quarter 2021 | Arsenic, PAH compounds, p-cresol, phenol, NWTPH-Dx, fecal coliform |
| 1st Quarter 2022 | All |
| 2nd Quarter 2022 | All |
| 3rd Quarter 2022 | All |
| 4th Quarter 2022 | Arsenic, PAH compounds, p-cresol, phenol, NWTPH-Dx, fecal coliform |
| 1st Quarter 2023 | Arsenic, PAH compounds, p-cresol, phenol, NWTPH-Dx, fecal coliform |
| 2nd Quarter 2023 | Arsenic, PAH compounds, p-cresol, phenol, NWTPH-Dx, fecal coliform |
| 3rd Quarter 2023 | Arsenic, PAH compounds, p-cresol, phenol, NWTPH-Dx, fecal coliform |
| 4th Quarter 2023 | Arsenic, PAH compounds, p-cresol, phenol, NWTPH-Dx, fecal coliform |
| 1st Quarter 2024 | Arsenic, PAH compounds, p-cresol, phenol, NWTPH-Dx, fecal coliform |
| 2nd Quarter 2024 | Arsenic, PAH compounds, p-cresol, phenol, NWTPH-Dx, fecal coliform |

**C.    Failure to Comply with Puget Sound Sediment Cleanup Site Requirements.**

Kiewit discharges to a Puget Sound Sediment Cleanup Site. Condition S6.C.2 of the Permit requires facilities that discharge to a Puget Sound Sediment Cleanup Site to sample for TSS on a quarterly basis. Where a facility discharges directly to a waterbody which is not listed as Category 5 for sediment, Table 7 of the Permit establishes a 30 mg/L benchmark limit for TSS. To the extent Kiewit does not discharge to a Category 5 waterbody or is not otherwise subject to a TSS numeric effluent limitation, Kiewit's discharges are subject to the TSS benchmark. Kiewit discharges stormwater that contains elevated levels of TSS in excess of the numeric benchmark, as indicated in Table 1, resulting in Level 1, Level 2, and Level 3 permit violations, as described below (*see* Section VI).

Condition S6.C.2 requires Kiewit to implement certain procedures related to accumulated solids from storm drain lines. Kiewit must remove any accumulated solids a minimum of once per permit term, using BMPs to prevent discharges of such solids to any surface waters of the State. Additionally, Kiewit must sample and analyze storm drain solids in accordance with Table 8 of the Permit a minimum of once per permit term. Samples must be collected from a representative feature within the storm drain system that corresponds to the discharge point where TSS samples are collected. Data resulting from such sampling must be reported to Ecology in a Solids Monitoring Report (SMR), which is due no later than the DMR due date for the reporting period in which the solids were sampled. Kiewit has failed to adequately implement this Condition because it has not sampled and analyzed its storm drain solids as required, nor has it submitted an SMR to Ecology with storm drain solids sampling data during the current permit term.

**D.      Failure to Timely Submit Discharge Monitoring Reports.**

Condition S9.B of the Permit requires Kiewit to use DMR forms provided or approved by Ecology to summarize, report and submit monitoring data to Ecology.  For each monitoring period (calendar quarter) a DMR must be completed and submitted to Ecology not later than 45 days after the end of the monitoring period. Kiewit has violated these conditions by failing to submit a DMR within the time prescribed for the third quarter 2020; second and fourth quarters 2021; first, second, and third quarters 2022; and third quarter 2023. Additionally, no DMR data was provided for Outfall 1 in the third quarter of 2020; first, second, third, and fourth quarters of 2021; first, second, third, and fourth quarters of 2022; and the first and second quarters of 2023.

**E.      Failure to Comply with Visual Monitoring Requirements.**

Conditions S7.A and S7.B of the Permit requires that monthly visual inspections be conducted at the facility by qualified personnel.  Each inspection is to include observations made at stormwater sampling locations and areas where stormwater associated with industrial activity is discharged, observations for the presence of floating materials, visible oil sheen, discoloration, turbidity, odor, etc. in the stormwater discharges, observations for the presence of illicit discharges, a verification that the descriptions of potential pollutant sources required by the permit are accurate, a verification that the site map in the SWPPP reflects current conditions, and an assessment of all BMPs that have been implemented (noting the effectiveness of the BMPs inspected, the locations of BMPs that need maintenance, the reason maintenance is needed and a schedule for maintenance, and locations where additional or different BMPs are needed).

Condition S7.C of the Permit requires that Kiewit record the results of each inspection in an inspection report or checklist that is maintained on-site and that documents the observations, verifications, and assessments required.  The report/checklist must include the time and date of the inspection, the locations inspected, a statement that, in the judgment of the person conducting the inspection and the responsible corporate officer, the facility is either in compliance or out of compliance with the SWPPP and the Permit, a summary report and schedule of implementation of the remedial actions that Kiewit plans to take if the site inspection indicates that the facility is out of compliance, the name, title, signature and certification of the person conducting the facility inspection, and a certification and signature of the responsible corporate officer or a duly authorized representative.

Kiewit is in violation of these requirements of Condition S7 of the Permit because, during the last five years, it has failed to conduct each of the requisite visual monitoring and inspections, failed to prepare and maintain the requisite inspection reports or checklists, and failed to make the requisite certifications and summaries.

## IV.      CORRECTIVE ACTION VIOLATIONS.

**A.      Violations of the Level One Requirements.**

Condition S8.B of the Permit requires Kiewit take specified actions, called a "Level One Corrective Action," each time quarterly stormwater sample results exceed a benchmark value or are outside the benchmark range for pH.

As described by Condition S8.B of the Permit, a Level One Corrective Action requires Kiewit to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permit and contains the correct BMPs from the applicable Stormwater Management Manual; (2) make appropriate revisions to the SWPPP to include additional operational source control BMPs with the goal of achieving the applicable benchmark values in future discharges and sign and certify the revised SWPPP in accordance with Condition S3.A.6 of the Permit; and (3) summarize the Level One Corrective Action in the Annual Report required under Condition S9.B of the Permit.  Condition S8.B.4 of the Permit requires Kiewit to implement the revised SWPPP as soon as possible, and no later than the DMR due date for the quarter the benchmark was exceeded.

Condition S5.A (Table 2) of the Permit establishes the following benchmarks: turbidity 25 NTU; pH 5 – 9 SU; total copper 14 µg/L; total zinc 117 µg/L.  Condition S5.B (Table 3) of the Permit establishes the following additional benchmark for Ecology code ECY003 (Marine Industrial Construction) that is applicable to the Facility: NWTPH-Dx 10 mg/L. Finally, to the extent Kiewit does not discharge to a Category 5 waterbody or is otherwise subject to a TSS numeric effluent limitation, Condition S6.C.2 establishes the following additional benchmark for facilities, like Kiewit's, discharging to a Puget Sound Sediment Cleanup Site: TSS 30 mg/L.

Kiewit has violated the requirements of the Permit described above by failing to conduct a Level One Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs, and the required summarization in the annual report each time in the last five years that its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH, including the benchmark excursions listed in Table 1 above.

**B.      Violations of the Level Two Requirements.**

Condition S8.C of the Permit requires Kiewit to take specified actions, called a "Level Two Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any two quarters during a calendar year.

As described by Condition S8.C of the Permit, a Level Two Corrective Action requires Kiewit to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permit; (2) make appropriate revisions to the SWPPP to include additional structural source control BMPs with the goal of achieving the applicable benchmark value(s) in future discharges and sign and certify the revised SWPPP in accordance with Condition S3.A.5 Permit; and (3) summarize the Level Two Corrective Action (planned or taken) in the Annual Report required under Condition S9.C of the Permit.  Condition S8.C.4 of the Permit requires Kiewit to implement the revised SWPPP according to condition S3 of the Permit and the applicable stormwater management manual as soon as possible, and no later than August 31st of the following year.

The Permit establishes the benchmarks applicable to Kiewit described in section IV.A of this notice of intent to sue letter.

Kiewit has violated the requirements of the Permit described above by failing to conduct a Level Two Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs, including additional structural

source control BMPs, and the required summarization in the annual report each time in the last five years that its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any two quarters during a calendar year. As indicated in Table 1 above, these violations include, but are not limited to, Kiewit's failure to fulfill these obligations for turbidity, copper, zinc, and TSS triggered by its stormwater sampling during calendar year 2020 and for turbidity, copper, zinc, and TSS triggered by its stormwater sampling during calendar year 2023.

### C.    Violations of the Level Three Requirements.

Condition S8.D of the Permit requires Kiewit to take specified actions, called a "Level Three Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any three quarters during a calendar year.

As described by Condition S8.D of the Permit, a Level Three Corrective Action requires Kiewit to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permit; (2) make appropriate revisions to the SWPPP to include additional treatment BMPs with the goal of achieving the applicable benchmark value(s) in future discharges and additional operational and/or structural source control BMPs if necessary for proper function and maintenance of treatment BMPs, and sign and certify the revised SWPPP in accordance with Condition S3.A.5 of the Permit; and (3) summarize the Level Three Corrective Action (planned or taken) in the Annual Report required under Condition S9.C of the Permit, including information on how monitoring, assessment, or evaluation information was (or will be) used to determine whether existing treatment BMPs will be modified/enhanced, or it new/additional treatment BMPs will be installed. Condition S8.D.2 of the Permit requires that a licensed professional engineer, geologist, hydrogeologist, of certified professional in storm water quality must design and stamp the portion of the SWPPP that addresses stormwater treatment structures or processes. *See* Permit Appendix 2 (defining "qualified industrial stormwater professional").

Condition S8.D.3 of the Permit requires that, before installing BMPs that require the site-specific design or sizing of structures, equipment, or processes to collect, convey, treat, reclaim, or dispose of industrial stormwater, Kiewit submit an engineering report, plans, and specifications, and an operations and maintenance manual to Ecology for review in accordance with chapter 173-204 of the Washington Administrative Code. The engineering report must be submitted no later than the May 15 prior to the Level Three Corrective Action Deadline. The plans and specifications and the operations and maintenance manual must be submitted to Ecology at least 30 days before construction/installation.

Condition S8.D.5 of the Permit requires Kiewit to fully implement the revised SWPPP according to condition S3 of the Permit and the applicable stormwater management manual as soon as possible, and no later than September 30th of the following year.

The Permit establishes the benchmarks applicable to Kiewit described in section IV.A of this notice of intent to sue letter.

Kiewit has violated the requirements of the Permit described above by failing to conduct a Level Three Corrective Action in accordance with permit conditions, including: the required review, revision and certification of the SWPPP; the requirement to have a specified professional design and stamp the portion of the SWPPP pertaining to treatment; the required implementation of additional BMPs, including additional

treatment BMPs; the required submission of an engineering report, plans, specifications, and an operations and maintenance plan; and the required summarization in the annual report each time in the last five years that its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any three quarters during a calendar year.  As indicated in Table 1 above, these violations include, but are not limited to, Kiewit's failure to fulfill these obligations for turbidity, copper, zinc, and TSS triggered by its stormwater sampling during calendar year 2023.

## V.    MANDATORY BACTERIA BMP VIOLATIONS.

Condition S6.C, Table 3, footnote h imposes mandatory BMP requirements on facilities that are subject to effluent sampling as a result of their discharge into 303(d)-listed waters. As stated above in Section III.B, Kiewit discharges into the Duwamish River, which is 303(d)-listed for fecal coliform, among other contaminants. Footnote h of the Permit's Table 6 requires Kiewit to incorporate into their SWPPP and implement: (i) use of AKART methods to prevent rodents, birds, and other animals from feeding/nesting/roosting at the facility; (ii) a minimum of one annual dry weather inspection of the stormwater system to identify and eliminate sanitary sewer cross-connections; (iii) installation of structural source control BMPs to address any potential on-site sources of bacterial contamination; and (iv) implementation of operational source control BMPs to address any potential on-site sources of bacterial contamination from any known sources of fecal coliform. Kiewit has failed to satisfy this condition each and every time within the past five years that it has not conducted an annual dry weather inspection of the stormwater system. Additionally, Kiewit is in violation of Condition S6.C because it has failed to incorporate into its SWPPP and implement adequate operational and structural source control BMPs as required to address potential sources of bacterial contamination on-site.

## VI.    NUMERIC EFFLUENT LIMITATION VIOLATIONS.

Condition S6.C.1.a. provides that facilities listed in Appendix 4 of the Permit are subject to impaired waterbody effluent limits, as identified in Table 6. The facility subject to this notice letter is a facility listed in Appendix 4 as being subject to a TSS numeric effluent limit of 30 mg/L.[1]  Kiewit discharges stormwater that contains elevated levels of TSS in excess of its numeric effluent limitation, as indicated in the table below. Each and every one of these discharges is a separate violation of the Permit. On information and belief, these violations occurred each and every day over the past five years on which there is at least 0.1 inch of precipitation in a 24-hour period and are reasonably likely to recur.

**Table 3 – 303(d) Impaired Water Body TSS Violations**

| Quarter in which sample collected | TSS concentration (numeric effluent limit: 30 mg/L) |
|---|---|
| Q3 2020 | 149 |
| Q4 2020 | 1420 |
| Q4 2021 | 316 |
| Q1 2023 | 71.2 |
| Q2 2023 | 184 |
| Q3 2023 | 49 |

---

[1] Appendix 4 is available at https://apps.ecology.wa.gov/paris/ImpairedWaterBodyLimits.aspx

## VII.    VIOLATIONS OF THE ANNUAL REPORT REQUIREMENTS.

Condition S9.C of the Permit requires Kiewit to submit an accurate and complete annual report to Ecology no later than May 15 of each year.  The annual report must include corrective action documentation as required in Condition S8.B – D of the Permit.  If a corrective action is not yet completed at the time of submission of the annual report, Kiewit must describe the status of any outstanding corrective action.  Specific information to be included in the annual report is identification of the conditions triggering the need for corrective action, description of the problem and identification of dates discovered, summary of any Level 1, 2, or 3 corrective actions completed during the previous calendar year, including the dates corrective actions completed, and description of the status of any Level 2 or 3 corrective actions triggered during the previous calendar year, including identification of the date Kiewit expects to complete corrective actions.

Kiewit has violated this condition.  The annual report submitted by Kiewit for 2021 (in March 2023) does not include the required information. The report does not identify the parameter that was exceeded in the fourth quarter, does not identify dates that any corrective actions were taken, and omits data from the first, second, and third quarters of the year. The annual report submitted by Kiewit for 2022 (in May 2023) also does not include the required information.  Specifically, the report does not describe all of the stormwater problems identified, such as those discussed in a December 2022 inspection report by Ecology, the report does not contain any records or data for the first, second, and third quarters of 2022, and there is no description of *additional* operational BMPs that Kiewit implemented or plans to implement as part of its Level 1 corrective action in response to exceeding the copper benchmark in the fourth quarter. Similarly, the 2023 annual report does not comply with the Permit, as it does not describe Level 1 or Level 3 corrective actions, as required. For example, the 2023 annual report lists "increased sweeping frequency from quarterly to monthly" as a level 1 corrective action, but this is not an additional operational source control BMP because it was already being implemented at the facility according to previous annual reports, and the report lists nothing for Level 3 corrective actions, despite having triggered them, as explained above.

## VIII.    VIOLATIONS OF THE RECORDKEEPING REQUIREMENTS.

### A.    Failure to Record Information.

Condition S4.B.3 of the Permit requires Kiewit to record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if Kiewit collected the sample within the first 12 hours of stormwater discharge event, an explanation of why Kiewit could not collect a sample within the first 12 hours of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling.  Upon information and belief, Kiewit is in violation of these conditions as it has not recorded each of these specified items for each sample taken during the last five years.

### B.    Failure to Retain Records.

Condition S9.D of the Permit requires Kiewit to retain for a minimum of five years a copy of the current Permit, a copy of the facility's coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to

complete the application for the Permit.  Upon information and belief, Kiewit is in violation of these conditions because it has failed to retain records of such information, reports, and other documentation during the last five years.

## IX.    FAILURE TO REPORT PERMIT VIOLATIONS.

Condition S9.F of the Permit requires Kiewit to take certain actions in the event Kiewit is unable to comply with any of the terms and conditions of the Permit which may endanger human health or the environment, or exceed any numeric effluent limitation in the permit.  In such circumstances, Kiewit must immediately take action to minimize potential pollution or otherwise stop the noncompliance and correct the problem, and Kiewit must immediately notify the appropriate Ecology regional office of the failure to comply. Kiewit must then submit a detailed written report to Ecology, including specified details, within 5 days of the time Kiewit became aware of the circumstances unless Ecology requests an earlier submission.

On information and belief, Kiewit routinely violates these requirements, including each and every time Kiewit failed to comply with the corrective action requirements described in section IV of this notice of intent to sue, each and every time Kiewit discharged stormwater with concentrations of pollutants in excess of the Permit benchmarks, including the requirements for Puget Sound Sediment Cleanup Sites, and each and every time Kiewit failed to sample for fecal coliform and take appropriate measures to prevent bacterial contamination. All these violations may endanger human health or the environment.

## X.    REQUEST FOR SWPPP.

Pursuant to Condition S9.G of the Permit, WAP hereby requests that Kiewit provide a copy of, or access to, its SWPPP complete with all incorporated plans, monitoring reports, checklists, and training and inspection logs.  The copy of the SWPPP and any other communications about this request should be directed to the undersigned at the letterhead address.

Should Kiewit fail to provide the requested complete copy of, or access to, its SWPPP as required by Condition S9.G of the Permit, it will be in violation of that condition, which violation shall also be subject to this notice of intent to sue and any ensuing lawsuit.

## XI.    CONCLUSION.

The above-described violations reflect those indicated by the information currently available to WAP. These violations are ongoing.  WAP intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), each of the above-described violations subjects the violator to a penalty of up to $66,713 per day for each violation that has occurred since November 2, 2015. In addition to civil penalties, WAP will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law.  Also, Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

WAP believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit. We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against Kiewit under Section 505(a) of the Clean Water Act for violations.

During the 60-day notice period, we would be willing to discuss effective remedies for the violations addressed in this letter and settlement terms. If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed promptly. We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Sincerely,

Smith & Lowney, PLLC

By:     /s/ *Marc Zemel*
        Marc Zemel
        /s/ *Evelyn Mailander*
        Evelyn Mailander

cc:     Michael S. Regan, Administrator, U.S. EPA
        Casey Sixkiller, Region 10 Administrator, U.S. EPA
        Laura Watson, Director, Washington Department of Ecology
        CT Corporation System, General Construction Company Registered Agent (711 Capitol Way S, Suite 204, Olympia, WA 98501)
        CT Corporation System, Kiewit Corporation Registered Agent (711 Capitol Way S, Suite 204, Olympia, WA 98501)
        CT Corporation System, Kiewit Infrastructure West Co. Registered Agent (711 Capitol Way S, Suite 204, Olympia, WA 98501)